# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LENA NIXON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:19-cv-01012-RDP |
| ANDREW SAUL, Commissioner of Social Security, | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant's Renewed Motion to Dismiss. (Doc. # 17). Defendant has moved to dismiss Plaintiff's Amended Complaint on the basis of lack of subject matter jurisdiction for failure to exhaust administrative remedies. For the reasons discussed below, the court concludes that Defendant's Renewed Motion to Dismiss (Doc. # 17) is due to be granted.

**I.     Factual Background[1]**

This is an employment discrimination case in which Plaintiff Lena Nixon alleges disability discrimination under Sections 501 and 504 of the Rehabilitation Act. (Doc. # 14). Plaintiff is an African-American female who was employed by the Social Security Administration ("SSA") as a Customer Service Representative in the TeleService Center ("TSC") in Birmingham, Alabama. (Doc. # 14 at 5, ¶ 17).[2]

---

[1] For the purpose of addressing the Motions to Dismiss (*see* Docs. # 36, 37, 38), the court treats the well-pleaded allegations in the Amended Complaint (Doc. # 35) as true.

[2] The Amended Complaint lists Nancy A. Berryhill, Acting Commissioner of the SSA, as the Defendant.

On January 20, 2016, after she had begun receiving medical treatment for an unknown illness, Plaintiff was diagnosed with "severe mold allergies." (*Id.* ¶ 18). Her symptoms included nasal congestion, headaches, throat irritation, hoarseness with voice loss, and shortness of breath. (*Id.*). These symptoms began while she was working at the Birmingham TSC office. (*Id.*). Plaintiff's physician, Dr. Brian McCool, treated Plaintiff with sublingual allergy drops for numerous types of mold and yeast species, and he "recommended that [Plaintiff] be allowed to work at a different location to avoid exposure to the . . . mold and yeast species to alleviate her symptoms[] or until the mold and other allergens in her current work area were abated." (*Id.* ¶ 19).

From January 21, 2016 to February 4, 2016, Plaintiff experienced numerous absences due to her mold allergy. (*Id.* ¶ 23). She had available a combination of "annual" and "sick" leave to cover these absences. (*Id.* ¶ 24). From February 4, 2016 to February 26, 2016, Plaintiff had to use "Leave Without Pay" to cover her absences, but she requested that those days be "reclassified" from "Leave Without Pay" to "Administrative Leave." (*Id.* ¶ 25).

On February 4, 2016, based on Dr. McCool's recommendations, Plaintiff requested a "Compassionate Detail Re-assignment" ("CDR") and transfer to the Trussville Division office. (*Id.* ¶ 21). On February 26, 2016, Defendant granted Plaintiff's request, and she was transferred to the Trussville office for 60 days. (*Id.* ¶ 22; Doc. # 17-2 at 2). Shortly thereafter, her symptoms resolved, and she was asymptomatic. (*Id.*).

On April 22, 2016, Plaintiff requested an extension of her CDR to the Bessemer office. (*Id.* ¶ 26). This request was denied. (*Id.* ¶ 26). She was transferred back to the Birmingham office, and her symptoms immediately returned. (*Id.* ¶ 27). Thereafter, Plaintiff's physician again "recommended that she be reassigned to a different location due to the severity of her allergic reactions from working in the Birmingham office." (*Id.* ¶ 28). On May 2, 2016, Plaintiff requested

a reasonable accommodation and hardship transfer to either the Jasper or Bessemer TSC field office. (*Id.* ¶ 29). These requests were denied. (*Id.*).

Plaintiff's health continued to worsen, and she began to experience high blood pressure. (*Id.* ¶ 31). Dr. McCool again recommended that Plaintiff be transferred to a different office, and he informed Defendant that "the allergen in the Birmingham office created a life threatening danger to . . . [Plaintiff]." (*Id.* ¶ 32). Nonetheless, Defendant refused to transfer Plaintiff to a different office. (*Id.*). Defendant "claimed that it had tested the Birmingham building for mold and found none[] present and insisted that [P]laintiff return to work . . . [there]." (*Id.* ¶ 33). However, Plaintiff alleges that the test results "indicated that the Birmingham office was not tested for the presence of mold." (*Id.* ¶ 34).

On May 13, 2016, Plaintiff filed a grievance through her union in accordance with its Collective Bargaining Agreement ("CBA"). (Doc. # 17-2 at 1). In the initial grievance, Plaintiff alleged violations of Articles 9, 18, and 31 of the CBA, and she requested: (1) administrative paid leave for the time that she has been unable to work due to the "hazardous work environment" at the Birmingham office; and (2) a hardship transfer to either the Bessemer or Trussville field office. (*Id.*). On May 19, 2016, Plaintiff's Union Representative, Brandi Coleman, requested an extension of time to file a "written presentation" regarding Plaintiff's claims. (Doc. # 17-2 at 4). On June 1, 2016, Plaintiff filed an official written "First Step Response to Grievance" through her union representative. (Doc. #17-2 at 2-3). Plaintiff's written response differed from her initial grievance, and she alleged only violations of Articles 9 and 18 of the CBA. (*Id.*; Doc. # 17-5 at 4, 7, 12, 14, 15, 23). Plaintiff similarly requested (1) retroactive and administrative paid leave for the time that she was unable to work due to the "hazardous work environment" at the Birmingham office, and (2) a hardship transfer to either the Bessemer or Trussville field office. (Doc. # 17-2 at 3). A day

3

later, on June 2, 2016, Plaintiff withdrew her grievance against Defendant.[3] (Doc. # 17-2 at 5).

On June 6, 2016, Plaintiff initiated the Equal Employment Opportunity ("EEO") process by contacting an EEO counselor. (Doc. # 17-3 at 1). Following a failed alternative dispute resolution mediation on August 15, 2016 (Doc. # 17-7 at 3), on August 31, 2016, Plaintiff filed a formal EEO Complaint. (Doc. # 17-4 at 1-2). In her EEO Complaint, Plaintiff claimed she was discriminated against because of her race, color, sex, and disability, and that Defendant retaliated against her and subjected her to harassment. (Doc. # 17-3 at 3-5). Specifically, Plaintiff complained of:

> (1) being denied an extension of her CRD on April 22, 2016; (2) being denied a reasonable accommodation and hardship transfer on May 2, 2016; and (3) having to take Leave Without Pay from February 4, 2016 to February 26, 2016 due to her illness from working in the Birmingham office.

(*Id.*). On October 20, 2016, the EEO accepted Claims 1 and 2 but dismissed Claim 3 due to untimeliness as Plaintiff did not consult with an EEO counselor within 45 days of February 26, 2016. (Doc. # 14 at 4, ¶ 12; Doc. # 17-7 at 4).

On October 24, 2016, Plaintiff's hardship transfer request was approved. (Doc. # 17-6 at 1). On October 27, 2016, Plaintiff requested the EEO reconsider the dismissal of Claim 3. (Doc. # 14 at 4, ¶ 12). On October 31, 2016, Plaintiff accepted the hardship transfer. (Doc. # 17-6 at 2). However, it is unclear from the pleadings whether Plaintiff did, in fact, transfer offices.

On March 17, 2017, the EEO issued a "Final Agency Decision" ("FAD") dismissing Claims 1 and 2 because Plaintiff previously elected to file a union grievance on the "same matter" (*i.e.*, a request for a permanent transfer and a CDR extension). (Doc. # 17-7 at 4). The EEO also renewed its dismissal of Claim 3 due to its untimeliness (that is, Plaintiff failed to consult an EEO

---

[3] Plaintiff sent an email on June 1, 2016 stating that "[e]ffective June 2, 2016, I am withdrawing my grievance against the agency." (Doc. # 17-2 at 5).

4

Counselor within 45 days of the alleged discriminatory action(s)). (Doc. # 14 at 4, ¶ 14, Doc. # 17-7 at 3-5). On March 24, 2017, Plaintiff requested a hearing with an Administrative Judge ("AJ"), and on April 17, 2017, she appealed the FAD to the Equal Employment Opportunity Commission's Office of Federal Operations. (Doc. 17-1 at 2). On May 22, 2017, the EEOC Office of Federal Operations "closed [Plaintiff's] appeal based on her statement that [her hearing with an EEOC AJ] [was] currently pending." (*Id.*).

On March 29, 2019, the AJ issued its Order dismissing all three claims. (Doc. # 17-1 at 4). Specifically, the AJ found that Claims 1 and 2 related to the same circumstances as her grievance (and further noted that Plaintiff did not refute that finding), and that Claim 3 was untimely and also "within the scope of [her] grievance" because it sought "administrative leave in lieu of . . . [Leave Without Pay] and [it] cite[d] CBA provisions pertaining to [Leave Without Pay]." (*Id.*).

Plaintiff did not appeal the AJ's decision to the EEOC's Office of Federal Operations. Instead, on June 27, 2019, Plaintiff filed this lawsuit, alleging discrimination in violation of (1) Sections 501 or 504 of the Rehabilitation Act, (2) Title VII of the Civil Rights Act of 1964, as amended, and (3) the Family and Medical Leave Act. (Doc. # 1). On March 24, 2020, Plaintiff filed an Amended Complaint, advancing a single cause of action: disability discrimination under Sections 501 and 504 of the Rehabilitation Act. (Doc. # 14).

In its Renewed Motion to Dismiss, Defendant argues that Plaintiff's Amended Complaint is due to be dismissed because Plaintiff failed to exhaust her administrative remedies; that is, Defendant contends she first filed a written union grievance and she is therefore barred from initiating an EEO Complaint or a federal lawsuit until that avenue is exhausted. (Doc. # 17 at 9).

**II.   Standard of Review**

When a Rule 12(b)(1) motion is filed, it can mount an attack on subject matter jurisdiction

5

that is either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1259. Factual attacks, on the other hand, question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *McElmurray v. Consolidated Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a court is confronted with a factual attack, the standard of review diverges.

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to [P]laintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citation omitted). Here, Defendant asserts a factual attack against Plaintiff's Amended Complaint. Therefore, the court may consider the attachments to Defendant's Motion to Dismiss.

Moreover, "a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction constitutes the proper vehicle for challenging a plaintiff's failure to exhaust administrative remedies in the federal employment sector." *Swauger v. Ashley*, 2020 WL 2218937, at *3 (N.D. Ala. May 7, 2020); *see e.g.*, *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) (holding that administrative remedies must be exhausted as a "jurisdictional prerequisite" to filing suit under the Rehabilitation Act); *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006) ("[O]ur case law establishes that '[a] federal employee must pursue and exhaust her administrative remedies as a

jurisdictional prerequisite to filing a Title VII action.'") (second alteration in original) (quoting *Crawford*, 186 F.3d at 1326).

**III.    Analysis**

Defendant claims that because Plaintiff began (but did not complete) the union grievance process before she filed her EEO Complaint, she failed to exhaust her administrative remedies. (Doc. # 17 at 7). Plaintiff, on the other hand, argues that because the EEO office issued a final decision, she exhausted all of her administrative remedies, and, moreover, the claims in her union grievance do not relate to the "same matter" as the claims in her EEO Complaint. (Doc. # 20 at 10).

    **A.    Plaintiff Was Required to Complete the Union Grievance Process Before Filing Her EEO Complaint**

Plaintiff contends she exhausted her administrative remedies because the Agency and the AJ dismissed all three of her claims, thus giving her the "right to sue." Her argument is mistaken. "Discrimination claims brought by federal employees who are covered under collective bargaining agreements are governed by the Federal Labor Management Relations Act, 5 U.S.C. § 7121(d)[4] … and . . . 29 C.F.R. § 1614.301(a)."[5] *Putnam v. Shinseki*, 2010 WL 11613979, at *5 (N.D. Ala. July

---

[4] Section 7121(d) provides, in relevant part:

> An aggrieved employee affected by a prohibited personnel action under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provision of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right on an aggrieved employee to request the Merit Systems Protection Board . . . or, where applicable, to request the [EEOC] to review the final decision in any other matter involving a complaint of discrimination . . . .

[5] Section 1614.301(a) provides, in relevant part:

> When a person is . . . covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint

7

26, 2010). Under this Act, federal employees alleging discriminatory personnel practices have the option to elect to pursue a claim under either (1) a statutory procedure or (2) a union assisted grievance procedure, but not both. *See* 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a).

By timely filing a grievance in writing, a federal employee has exercised his or her option to pursue claims through the negotiated grievance process. 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301. If the union grievance procedure is invoked, the employee commits "to resolving h[er] grievance in accordance with the procedures prescribed in the collective bargaining agreement between h[er] union and h[er] employing agency." *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006); *see also Devanugh v. United States Postal Serv.*, 293 F. App'x 276, 280 (5th Cir. 2008). Upon completing the union grievance process, an employee can then appeal that decision to the EEOC. *Troupe v. Brennan*, 2020 WL 1536388, at *4 (N.D. Ala. Mar. 31, 2020). This is the proper course of action based upon the route Plaintiff chose. But she did not adhere to it.

Further, although the statute is silent on withdrawal, another member of this court has held that the plaintiff's initial choice is irrevocable. *See e.g.*, *Troupe*, 2020 WL 1536388, at *4 ("[A] federal employee who alleges a discriminatory personnel practice must elect to pursue his claim under either a statutory procedure or a union assisted grievance procedure; he cannot pursue both avenues, and *his election is irrevocable*.") (emphasis added) (internal quotation marks omitted) (quoting *Fernandez*, 471 F.3d at 52); *see also Wright v. Snow*, 2006 WL 1663490, at *7 (D.D.C. June 14, 2006) (holding that "withdrawal of a grievance does not abrogate a complainant's earlier choice"); *Taylor v. Dam*, 244 F. Supp. 2d 747 (S.D. Tex. 2003) (holding that the plaintiff

---

or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both. . . . An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file [an EEO] complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination.

8

*irrevocably* elected to pursue claims through negotiated grievance procedure rather than statutory procedure, and that abandonment of the grievance process by attempting to file an EEO claim resulted in failure to exhaust administrative remedies, thus precluding Title VII claim).

Therefore, because Plaintiff first elected to file a union grievance, she was required to exhaust that avenue before filing an EEO Complaint or a federal lawsuit.

> **B.     Plaintiff's Claims Under Both Her Union Grievance and Her EEO Complaint Relate to the Same Matter**

The next question is whether Plaintiff's union grievance and her EEO Complaint involve the "same matter." She argues that they do not because her union grievance only involved a "compensation" issue and her EEO Complaint involved discrimination/harassment. But, as discussed below, her argument is without merit.

"[A]ny employee who files a grievance alleging discrimination 'may not thereafter file a complaint on the same matter.'" *Putman*, 2010 WL 11613979, at *6 (citing 29 C.F.R. § 1614.301(a)). *See Mohr v. Esper*, 2019 WL 8014316, at *8 (N.D. Ala. Aug. 19, 2019) (quoting 5 U.S.C. § 7121(d)). "Any such complaint filed after a grievance has been filed on the same matter shall be dismissed without prejudice." 29 C.F.R. § 1614.301(a). "[C]ourts have dismissed discrimination claims when federal employees have grieved them in collective bargaining regimes, even when employees have not specifically claimed discrimination in the applicable grievance." *Mohr*, 2019 WL 8014316, at *8. Importantly, "[t]he term 'matter' in § 7121(d) 'refer[s] to the underlying government action which precipitated the complaint,' not the legal theory employed to challenge the government action." *Id.* (quoting *Redmon v. Mineta*, 243 F. App'x 920, 924 (6th Cir. 2007)); *see also Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) ("'[M]atter' . . . encompass[es] more than a legal claim and instead . . . encompass[es] the 'underlying action . . . or the 'topics raised[.]'"); *Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814, 917-18 (10th Cir.

9

2006) (holding that the grievance proceeding and subsequent discrimination claim involved the same "matter" for purposes of § 7121(d), even though the grievance did not proceed on a legal theory of discrimination).

Here, Plaintiff's written "First Step Response to Grievance" discussed (1) her request for retroactive and up-to-date administrative pay, (2) the alleged hazardous work environment at the Birmingham field office, and (3) her request for a hardship transfer. (Doc. # 17-2 at 2). Similarly, in Plaintiff's EEO Complaint, her claims focused on the alleged disparate treatment and harassment related to the denial of her extended CDR request, hardship transfer, and her Leave Without Pay days. Thus, the issues in both the written union grievance and the EEO Complaint center on the alleged unsafe work environment and alleged discrimination and thus relate to the "same matter." *See Redmon*, 243 F. App'x at 924.

Because Plaintiff (1) elected to pursue the union grievance process initially (and did not exhaust that avenue), and (2) because her EEO Complaint relates to the "same matter," her Amended Complaint is due to be dismissed without prejudice.

**IV.   Conclusion**

For all the foregoing reasons, Defendant's Motion to Dismiss (Doc. # 17) is due to be granted, and Plaintiff's Amended Complaint (Doc. # 14) is due to be dismissed without prejudice.

**DONE** and **ORDERED** this July 24, 2020.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE